UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FREDERICK G. GEIGER,

                    Plaintiff,

          DECISION AND ORDER

    -v-

TOWN OF GREECE, MERRITT RAHN,         07-CV-6066 CJS
Chief of Police, LT. STEPHEN WISE,
Both individually and in their Official
Capacity & GANNETT COMPANY, INC.,

                    Defendants.

_____

APPEARANCES

For the Plaintiff:                Christina A. Agola, Esq.
                                   Melvin Bressler, Esq. of Counsel
                                   Law Office of Christina A. Agola, Esq.
                                   730 First Federal Plaza
                                   28 East Main Street
                                   Rochester, New York 14614

For defendant Gannett
Company. Inc.:                Christopher D. Thomas, Esq.
                                   Nixon Peabody LLP
                                   1100 Clinton Square
                                   Rochester, New York 14604-1792

INTRODUCTION

This is an action which involved an allegation of defamation against defendant Gannett Company, Inc. ("Gannett"). Now before the Court is Gannett's motion [#20] for sanctions pursuant to Federal Rule of Civil Procedure ("FRCP") 11(b)(2) & (3). For the reasons that follow, Gannett's application is granted.

BACKGROUND

The facts of this case were set forth in the Court's prior Decisions and Orders, and need not be repeated here in their entirety. For purposes of the subject motion it is sufficient to note the following facts. At all relevant times, plaintiff Frederick Geiger ("Plaintiff") operated a towing service in the Town of Greece, New York. Between April 1, 2002 and March 31, 2003, plaintiff and the Town of Greece ("the Town") were parties to a written "Towing Service Agreement." (Sortino Aff., Ex. 4).[1] Pursuant to the agreement, the parties agreed, *inter alia*, that plaintiff would "receive towing and service assignments from the 911 Dispatcher," in situations "where vehicles [were] abandoned, disabled, involved in an accident or . . . subject to [the] loss of their drivers due to arrest or other reason." (*Id*.) Significantly, plaintiff and the Town agreed that plaintiff could charge fees, for towing and storage, in accordance with a Fee Schedule contained in the agreement. (*Id*. at p. 5)

On or about August 18, 2005, the Town of Greece received a complaint from a citizen, who alleged that plaintiff had overcharged her for towing services. The Town investigated the complaint, and concluded that plaintiff had overcharged the citizen. Subsequently, the Town removed Plaintiff from its list of tow truck operators, and asked the New York State Attorney General ("Attorney General") to investigate plaintiff. The Attorney General did so, and concluded that plaintiff had overcharged at least 126 consumers.

---

[1] The agreement also stated that it could "be extended for additional periods of one(1) year upon approval by the Town Board," and stated that plaintiff was required to notify the Town in writing if he was not interested in renewing the agreement. (*Id*. at p. 7) No written extension of the agreement was ever made. On the other hand, neither the Town nor plaintiff ever indicated that either was interested in terminating the agreement. Instead, following the expiration of the written agreement, the Town's 911 operator continued to assign towing jobs to plaintiff, and plaintiff continued to accept the assignments, under the same terms as before.

Subsequently, the Attorney General and plaintiff entered into an agreement, entitled "Assurance of Discontinuance Pursuant to Executive Law § 63(15)"[2] ("the Assurance"). The Assurance contained a section entitled "Findings of the Attorney General" ("findings"), which indicated, in relevant part:

> Respondent failed to charge consumers the towing fees established by the Towing Agreements for towing calls during the Relevant Time Period. In fact, Respondent charged consumers a fee in excess of the fees established in the Towing Agreements.
>
> ***
>
> In addition to charging towing fees in excess of the fees established in the Towing Agreements, Respondent repeatedly charged consumers additional 'clean up' and 'labor and waiting' fees which he was not authorized to charge under the terms of the Towing Agreements.
>
> ***
>
> N.Y. General Business Law § 349 declares it unlawful to engage in deceptive acts or practices in the conduct of any business, trade or commerce. *By charging towing fees in excess of and/or not authorized by the Towing Agreements, Respondent engaged in deceptive acts and practices. These actions also constituted fraud under N.Y. Executive Law § 63(12).*
>
> ***
>
> It now appears that Respondent is willing to enter into this Assurance of Discontinuance (hereinafter, "Assurance") and that the Attorney General is willing to accept this Assurance pursuant to N.Y. Executive Law § 63(15) in lieu of commencing a statutory proceeding.[3]

(Assurance, pp. 3-4) (emphasis added). The Assurance next contained a section entitled "Agreement," in which plaintiff and the Attorney General agreed that the Assurance would be "binding on and apply to Respondent," i.e. the Plaintiff, and that Plaintiff would

---

[2] Section 63(12) of the New York Executive Law pertains to the procedure by which the Attorney General may seek an injunction against a person who "shall engage in repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business."

[3] Executive Law § 63(15) states, in relevant part: "In any case where the attorney general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state, in lieu thereof he may accept an assurance of discontinuance of any act or practice in violation of such law from any person engaged or who has engaged in such act or practice."

"permanently cease and desist from engaging in any acts or practices as set forth above in violation of N.Y. General Business Law §§ 130, 349 and 399-x and New York Executive Law § 63(12)." Plaintiff further agreed to pay "$6,336.70, to be applied toward restitution to eligible consumers," and to pay $4,000 in penalties. Plaintiff signed the Assurance on December 5, 2006.

On February 5, 2007, the Attorney General issued a press release concerning the agreement, which stated in relevant part:

> Attorney General Andrew M. Cuomo today announced a settlement with a towing service operator in Monroe County that will provide refunds to consumers who were overcharged.
>
> The settlement requires Frederick G. Geiger, owner of Geiger Towing Service in the Town of Greece, to pay a total of $6,336.70 in refunds to 126 consumers who were overcharged for towing services provided by Geiger. Additional refunds will be made to consumers who file legitimate requests with the Attorney General's office by March 5, 2007. Geiger also agreed to pay penalties and costs totaling $4,000.
>
> From April 2003 through August 2005, the Town of Greece contracted with Geiger to provide towing services on behalf of the town police department in instances where motorists' vehicles were abandoned, disabled, or in need of towing due to an accident or arrest. The towing agreements required Geiger to charge towing fees pursuant to a negotiated fee schedule. Despite the agreements, Geiger repeatedly charged motorists towing fees that exceeded the maximum amount permitted. In some cases, unauthorized additional fees identified as clean up, labor, and waiting were charged as well.

(Aff. of Christopher D. Thomas, Esq., Ex. A).

The next day, February 6, 2007, the Rochester Democrat and Chronicle newspaper, which is owned by Gannett, published a news story, entitled "Towing service to repay charges," which stated, in relevant part:

> Under a settlement reached Monday with the state Attorney General's Office, a Greece towing service operator who routinely ripped off his customers must repay more than $6,000 to the people he overcharged.

> The Attorney General's Office said Frederick G. Geiger, owner of Geiger Towing Service, 330 North Greece Road, will also pay more than $4,000 in penalties and other costs.
>
> Geiger's company provided towing service to the Greece Police Department between April 2003 and August 2005, when police discovered that he was charging motorists unauthorized fees to get their cars back. Under Geiger's contract with the town, he was to charge a flat fee for towing, plus storage. However, he was charging additional fees for "cleanup, labor and waiting," according to the Attorney General's Office.
>
> Geiger agreed to repay 126 people a total of $6,336.70 to settle the case. Additional refunds will be made to consumers who file legitimate requests with the Attorney General's Office by March 5.

(*Id.*, Ex. B).

On February 6, 2007, Plaintiff commenced the subject action and asserted a claim against Gannett for defamation under New York State law. Both the Complaint in this action [#1] and the Amended Complaint [#2] were signed by Plaintiff's counsel Christina Agola, Esq. ("Agola"). On March 13, 2007, Gannett filed a motion [#5] to dismiss the Amended Complaint pursuant to Rule 12(b)(6). In that regard, Gannett asserted that the defamation claim failed as a matter of law, pursuant to New York Civil Rights Law § 74, since the article was a fair and true report of an official proceeding, namely, the Attorney General's investigation, and substantially mirrored the Attorney General's press release. However, Plaintiff responded that the article did not fairly and truly report what happened. In that regard, Agola's co-counsel, Melvin Bressler, Esq. ("Bressler"), submitted an declaration [#10] in which he indicated that Gannett's newspaper article was defamatory because the wrongdoing described in the Assurance agreement, which he negotiated on behalf of Mr. Geiger, was merely "accusations" against Plaintiff, and that Plaintiff had not admitted any wrongdoing. (Bressler Declaration [#10] at ¶ 7) ("After Mr. Geiger was served with the

5

Attorney General's accusations, he denied them. We, as his attorney, then negotiated a civil settlement, specifically denying any guilt."). Bressler also submitted a Memorandum of Law [#12] in which he reiterated the view that Plaintiff had not admitted any wrongdoing as part of his Assurance agreement with the New York State Attorney General. *See, Id*. at 12 ("[T]he February 5, 2007 press release did not state that Plaintiff 'ripped off his customers' either verbatim, or from the gist of the press release, not did Plaintiff admit to 'ripping off his customers' nor was there a determination that Plaintiff 'ripped off his customers.'"); *Id*. at 13 ("Plaintiff admitted no guilt and there was no determination of guilt or wrongdoing as per terms of the settlement agreement, and as is clear from the language of the February 5, 2007 press release issued by the Attorney General's Office."). On August 9, 2007, during oral argument of the motion, Bressler again indicated that Plaintiff had never admitted to overcharging customers. However, the Court disagreed, finding that the Assurance agreement clearly constituted an admission of wrongdoing by Plaintiff. (Transcript of Oral Argument [#32], pp. 5-12).

On September 5, 2007, the Court issued a Decision and Order [#23] dismissing the defamation claim. In its Decision and Order, the Court stated, in relevant part:

> Gannett contends that plaintiff's defamation claim against it must be dismissed pursuant to New York Civil Rights Law § 74, which provides, in relevant part, that, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. CIVIL RIGHTS LAW § 74 (McKinney). Plaintiff counters that the following two statements in Gannett's news article were neither true nor fair: 1) "a Greece towing service operator who routinely ripped off his customers"; and 2) "police discovered that he was charging motorists unauthorized fees to get their cars back." According to Plaintiff, these statements "impute more serious conduct than that which was stated in the press release." Plaintiff also contends that the Attorney General's "findings" in the Assurance were merely

6

> "allegations," and that the Assurance contains no admission of wrongdoing by plaintiff. In sum, plaintiff maintains that the Attorney General's investigation, including the Assurance and press release, is not an official proceeding within the meaning of Civil Rights Law § 74. Plaintiff also insists that Gannett should have conducted its own investigation into the Attorney General's "allegations."
>
> The Court disagrees, and finds that the Attorney General's investigation into plaintiff's business practices was an official proceeding, of which the Assurance was a part. The Court also finds, as a matter of law, that in the Assurance, plaintiff admitted committing 126 instances of fraud and dishonesty,[4] and consequently, the Gannett newspaper article was a fair and true report. Gannett's motion to dismiss [#5] is therefore granted.

(Decision and Order [#23] at 11-12) (citations omitted).

Surprisingly, on September 19, 2007, Plaintiff filed a Motion for Reconsideration [#31] raising the same arguments as before. In addition, Plaintiff's counsel indicated, upon information and belief, and notwithstanding the clear language of the Assurance agreement, that the Assistant New York Attorney General who negotiated the agreement with Plaintiff had made a hearsay statement that the agreement was "not an admission of guilt" by Plaintiff. (Agola Declaration [#31] ¶ 5). On November 2, 2007, the Court issued a Decision and Order [#37] denying Plaintiff's motion for reconsideration.

DISCUSSION

At the time of the events at issue, Rule 11 of the Federal Rules of Civil Procedure ("FRCP") stated, in relevant part:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

---

[4]Plaintiff's counsel states that, "We, as his attorney, then negotiated a civil settlement, specifically denying any guilt. Mr. Geiger simply made an economic decision that it was better to settle than pay attorney fees and get involved in a probably protracted litigation." (Bressler Aff. ¶ 7). Clearly, however, no such declaration of innocence appears in the settlement agreement.

***

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> ***
>
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> ***
>
> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, or order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

FRCP 11. In fashioning a sanction under Rule 11, a district court has "broad discretion," and, where the court decides that an award of attorney's fees is an appropriate sanction, "a lodestar amount need not be routinely awarded." *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir. 1987). Instead, a court has "discretion to award only that portion of a defendant's attorney fee thought reasonable to serve the sanctioning purpose of the Rule." *Id*. at 123.

Applying the foregoing applicable principles of law to this case, the Court finds that Plaintiff's counsel violated Rule 11(b)(2) & (3) by asserting and then pursuing a defamation claim that was clearly not warranted by the facts of this case, or by existing law or a

8

nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. In opposition to the Rule 11 motion, Plaintiff's counsel argue that they reasonably believed that Gannett's actions were not privileged by New York Civil Rights Law § 74, since the newspaper article was "based on the press release, and not the actual Agreement." (Pl. Memo of Law [#33] at 4). However, as the Court stated during oral argument,[5] Plaintiff did not pursue that argument in opposition to Gannett's motion to dismiss, but instead, argued that the statements in the press release were merely "allegations" of wrongdoing, and that the newspaper article "suggest[ed] more serious conduct than that which was alleged in the press release." (Pl. Memo of Law [#12] at 1). In any event, Plaintiff's counsel have not cited any legal authority to support their argument relative to Civil Rights Law § 74.[6] Alternatively, Plaintiff's counsel argue that Rule 11 sanctions are not warranted because "the parties to the settlement agreement [Assurance] did not intend it to be an admission of guilt." (Pl. Memo of Law [#33] at 4). However, this argument has no merit, since the Assurance agreement, which was accurately described by the Attorney General's press release, is clearly an admission of guilt by Mr. Geiger.

---

[5]*See*,Transcript of Oral Argument [#32] at 4-5 ("THE COURT:[W]hile you suggest somewhere in your affidavit that what happened with the Attorney General is not an official proceeding, you don't make that argument in you memorandum of law. You never deal with it again. Presumably you didn't find any case law to support your position. I don't think there is much question it's an official proceeding. I'm assuming since you didn't discuss it in you memorandum of law, you abandoned that position? MR. BRESSLER: That would be the result whether it was intentional or otherwise." Although Plaintiff waived the argument, the Court nevertheless considered the argument in its Decision and Order [#23].

[6]Plaintiff's counsel suggest that Agola researched the Civil Rights Law § 74 issue before commencing this action. (See, Pl. Memo of Law [#33] at 4). However, Agola's affidavit indicates only that she researched the issue of defamation generally. (Agola Affidavit [#33] at ¶ 7)("I researched the issue and concluded that the article by Gannett had defamed Mr. Geiger, and in fact [I] believed that the contents of the article by Gannett was libelous per se."). To date, Plaintiff's counsel have not identified any legal authority to support their arguments relative to Civil Rights Law § 74. In any event, one would not need to perform any legal research to reach the obvious conclusion that, whether he intended to or not, Mr. Geiger admitted in writing to committing the very acts described in the newspaper article.

9

Nevertheless, despite the clear wording of the Assurance, Plaintiff's counsel obstinately refuse to admit that the Assurance says what it says. In short, the Court finds that Plaintiff's counsel violated Rule 11(b)(2) & (3) by pursuing a frivolous defamation claim.

As for an appropriate sanction, the Court has considered the various possible sanctions, and concludes that an award of attorney's fees is an appropriate sanction within the meaning of FRCP 11(c)(2). Gannett has requested actual attorney's fees and costs in the amount of $25,257.69. However, upon consideration of all of the facts and circumstances of this case, the Court finds that such an award is not necessary to achieve the deterrent effect discussed in FRCP 11(c)(2). Instead, the Court finds that an award of attorney's fees in the amount of $5,000.00 is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."

## CONCLUSION

For all of the foregoing reasons, Gannett's motion [#20] for sanctions pursuant to Rule 11 is granted to the extent that a sanction, in the form of an award of attorney's fees in the amount of five thousand dollars ($5,000.00), is imposed against the Law Office of Christina A. Agola. The sanction shall be paid to Gannett within thirty (30) days of the date of this Decision and Order.

SO ORDERED.

Dated:     March 17, 2008
             Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge